IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHIRLIE TAYLOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 24-0203-MU |
| ) | |
| FRANK J. BISIGNANO, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Shirlie Taylor brings this action, pursuant to 42 U.S.C. §§ 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Act. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 7 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, … order the entry of a final judgment, and conduct all post-judgment proceedings.")). *See also* Doc. 8. Upon consideration of the administrative record, Taylor's brief, the Commissioner's brief, and Taylor's reply brief,

---

[1] Frank J. Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank J. Bisignano is substituted in lieu of Martin O'Malley as the defendant in this action.

the Court concludes that the Commissioner's decision denying benefits should be affirmed.[2]

## I.  PROCEDURAL HISTORY

Taylor applied for SSI, under Title XVI of the Act, 42 U.S.C. §§ 1381-1383d, on July 19, 2021, alleging disability beginning on July 1, 2018. (PageID. 206-12). Her application was denied at the initial level of administrative review on February 22, 2022, and upon reconsideration on May 24, 2023. (PageID. 116-19; 128-30). On or about June 19, 2023, Taylor requested a hearing by an Administrative Law Judge (ALJ). (PageID. 131). Taylor appeared at a hearing before the ALJ on November 1, 2023. (PageID. 72-89). On December 6, 2023, the ALJ issued an unfavorable decision finding that Taylor was not under a disability during the applicable time. (PageID. 54-66). Taylor appealed the ALJ's decision to the Appeals Council, and, on May 6, 2024, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (PageID. 38-42).

After exhausting her administrative remedies, Taylor sought judicial review in this Court, pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and the social security transcript on August 20, 2024. (Docs. 9, 10). Both parties filed briefs setting forth their respective positions. (Docs. 12, 14, and 14). The parties waived oral argument. (Docs. 15, 16).

---

[2] Any appeal taken from this Order and Judgment shall be made to the Eleventh Circuit Court of Appeals. See Doc. 7. ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for the judicial circuit in the same manner as an appeal from any other judgment of this district court.").

## II.  CLAIMS ON APPEAL

Taylor makes the following claims on appeal:

1) The ALJ's decision is contrary to the findings and opinions of every examining and treating medical source and is not supported by substantial evidence; and

2) The ALJ erred by failing to find Taylor disabled under Social Security Ruling ("SSR") 85-15, Listing 12.11, and or Listing 12.03.

(Doc. 12 at p. 1; PageID. 795).

## III. BACKGROUND FACTS

Taylor, who was born on February 24, 1974, was 47 years old at the time she filed her claim for benefits. (PageID. 206). Taylor initially alleged disability because she would "talk to [her]self constantly" and had tired and hurting legs when she walked, headaches, shortness of breath, and anemia. (PageID. 232). She reported that she last worked in 2014 and "just quit because I was getting tired." (*Id.*). She further reported that she thinks her conditions stopped her from working starting in July of 2018. (*Id.*). She reported that she graduated from Wilcox Central High School in 1992 and has had no other job training or education. (PageID. 233). She further reported that she can read and write simple messages, such as a shopping list or short note. (*Id.*). The Social Security Administration interviewer who spoke with Taylor by telephone in connection with completion of her application for benefits made the following observations on the Disability Report – Field Office form:

> CLAIMANT TALKED CONSTANTLY DURING THE ENTIRE
> INTERVIEW TO WHAT APPEARED TO BE SOMEONE
> ELSE BUT I DO NOT KNOW IF ANYONE WAS WITH HER.
> I NEVER HEARD ANYONE ELSE IN THE BACKGROUND.

> FOR THE MOST PART, I COULD NOT UNDERSTAND WHAT SHE WAS SAYING IF SHE WASN'T ANSWERING MY DIRECT QUESTION. SHE STATED "I TALK TO MYSELF ALL THE TIME." THERE WERE ALSO LOTS OF WEIRD NOISES THAT SHE WAS MAKING THE WHOLE TIME I WAS ON THE PHONE WITH HER ALSO. **SHE ANSWERED THE QUESTIONS I ASKED WITHOUT ANY DIFFICULTY THOUGH.**

(PageID. 229) (All capitalization in original) (emphasis added).

At the hearing before the ALJ, Taylor testified that she was in special classes in school and did not remember taking a graduation exam. (PageID. 79). During the fifteen-year period preceding her filing for benefits, she reported self-employment income for three years and testified that she worked as a housekeeper in individuals' homes during that time. (PageID. 76-77).

The record contains a Function Report – Adult for Taylor, which she appears to have completed in July of 2021. (PageID. 247). In that report, when asked how her conditions limited her ability to work, she stated, "when I walk I get tired and my leg hurt when I walk and I get out of breathe [sic] and I talk to myself [constantly] and I get low blood." (*Id.*). Her daily activities listed were, "eat, watch tv." (PageID. 252). She stated she cared for her friend who was blind, but there is no indication what she did to care for him. (*Id.*). She stated that she needed to be reminded to take her medications, that she could prepare sandwiches or frozen meals, and that she could do laundry and clean about three times a week. (PageID. 253). She further stated that she does not drive, goes shopping about once a month, watches TV daily, talks to other people, and attends church. (PageID. 254-55). In addition, she stated that she can finish what she starts, can follow written and spoken instructions "good," gets along with authority

figures "good," has never been let go from a job because of problems getting along with other people, and can handle stress and changes in routine "ok." (PageID. 256-57).

The record contains another Function Report – Adult for Taylor, which is dated November 4, 2022. (PageID. 297). At the time of completing this Function Report, she stated that she lived alone; however, the report also showed that she lived at the same address as the friend she named in the report. (*Id.*). In this report she reiterated, "I can't work my back hurt and legs and I talk to myself [constantly]." (*Id.*). She stated that her only daily activity was watching tv; she did not take care of anyone else; she could no longer cook or clean; she needed to be reminded to take care of her personal needs and grooming and to take her medications; she could make a sandwich about twice a week and could sometimes iron, but she did no other household chores; and she did not drive but shopped about twice a month and went to church. (PageID. 298-01). She stated she could count change, but she could not pay bills, handle a savings account, or use a checkbook or money order. (*Id.*). Her only hobby was watching television, which she did not do often. (PageID. 301). She reported that she did not need reminders to go places, nor did she need anyone to accompany her. (*Id.*). She further stated she could pay attention for about 20 minutes and did not finish what she started. (PageID. 302). She reported that she can follow written and spoken instructions "good," gets along with authority figures "good," can handle stress "well," and can handle changes in routine "good." (*Id.*).

During her hearing before the ALJ on November 1, 2023, she testified that she hears voices, both male and female, and talks to herself every day. (PageID. 78-79). She also testified she has visions of her mother and brother, both of whom are

5

deceased. (*Id*). She testified that she has never applied for a driver's license, never driven a car, and never tried to drive. (PageID. 79). She testified that she lives with her cousin, who does all of the household chores and that her only daily activity is watching television. (PageID. 80-81). In addition, she testified that she does not know how to use the microwave, her cousin reads her mail to her, and her cousin transported her to the hearing. (PageID. 81).

## IV. ALJ'S DECISION

After conducting a hearing, the ALJ determined that Taylor was not under a disability at any time from July 16, 2021, the date the application was filed, through the date of the decision, December 6, 2023, and thus, was not entitled to benefits. (PageID. 65-66). In applying the five-step sequential evaluation to Taylor's claim, at step one, the ALJ found that Taylor had not engaged in substantial gainful activity ("SGA") since her application date, July 16, 2021. (PageID. 56). Therefore, he proceeded to an evaluation of steps two and three. The ALJ found that Taylor had the following severe impairments: degenerative disc disease, obesity, borderline intellectual functioning, and major depressive disorder with psychotic features, but that she did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (PageID. 56-58). After considering the entire record, the ALJ concluded that Taylor has the residual functional capacity ("RFC") to perform light work, except that she can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds; she can understand, remember, and carry out simple and detailed but not complex instructions and use judgment to make simple work-related decisions; she can frequently interact with coworkers and supervisors but never interact with the public;

6

and she can adjust to occasional changes in a routine work setting. (PageID. 58-64). After setting forth her RFC, the ALJ determined that Taylor could perform past relevant work as a cleaner/housekeeper. (PageID. 64). Accordingly, the ALJ found that Taylor was not disabled within the meaning of the Act from July 16, 2021, the date she filed her application, through the date of the decision, which was December 6, 2023. (PageID. 65-66).

## V. STANDARD OF REVIEW

Eligibility for SSI benefits requires that the claimant be disabled. 42 U.S.C. §§ 1382(a)(1)-(2). A claimant is disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be severe, making the claimant unable to do the claimant's previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11. "Substantial gainful activity means work that … [i]nvolves doing significant and productive physical or mental duties [that] [i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510.

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation in determining whether the claimant is disabled:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairment in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

7

*Watkins v. Comm'r of Soc. Sec.,* 457 F. App'x 868, 870 (11th Cir. 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart,* 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden of proving the first four steps, and if the claimant does so, the burden shifts to the Commissioner to prove the fifth step. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

If the claimant appeals an unfavorable ALJ decision, the reviewing court must determine whether the Commissioner's decision to deny benefits was "supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel*, 631 F.3d at 1178 (citations omitted). "In determining whether substantial evidence exists, [the reviewing court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id*. When a decision is supported by substantial evidence, the reviewing court must affirm "[e]ven if [the court] find[s] that the evidence preponderates against the Secretary's decision." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

## VI. DISCUSSION

### A. Whether Substantial Evidence Supports the ALJ's RFC Findings

Taylor claims that the ALJ's decision is not supported by substantial evidence because, in her view, the findings and opinions of every examining and treating medical source show she is disabled. Essentially, Taylor is challenging the ALJ's RFC findings.

In evaluating this claim, the Court must be mindful that a claimant's RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. It is an "administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. It represents **the most, not the least**, a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2 (emphasis added). The RFC assessment is based on "all of the relevant medical **and other evidence**." 20 C.F.R. § 404.1545(a)(3). In assessing a claimant's RFC, the ALJ must consider only limitations and restrictions attributable to medically determinable impairments, i.e., those that are demonstrable by objective medical evidence. SSR 96-8p, 1996 WL 374184, at *2. Similarly, if the evidence does not show a limitation or restriction of a specific functional capacity, the ALJ should consider the claimant to have no limitation with respect to that functional capacity. Id. at *3.

The ultimate responsibility for determining a claimant's RFC, in light of the evidence presented, is reserved to the ALJ, not to the claimant's physicians or other

experts. *See* 20 C.F.R. § 404.1546. "[T]he ALJ will evaluate a [physician's] statement [concerning a claimant's capabilities] in light of the other evidence presented and the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007); *see also Pritchett v. Colvin*, Civ. A. No. 12-0768-M, 2013 WL 3894960, at *5 (S.D. Ala. July 29, 2013) (holding that "the ALJ is responsible for determining a claimant's RFC"). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to the legal conclusions reached.'" *Jones v. Colvin*, CA 14-00247-C, 2015 WL 5737156, at *23 (S.D. Ala. Sept. 30, 2015) (quoting *Ricks v. Astrue*, No. 3:10-cv-975-TEM, 2012 WL 1020428, at *9 (M.D. Fla. Mar. 27, 2012) (internal quotation marks and citations omitted)).

Taylor argues that the ALJ did not properly support his findings as to the persuasiveness or weight given to the opinions of the various medical providers who provided consultative or one visit evaluations of her mental impairment. (Doc. 12, PageID. 801-04; Doc. 14, PageID. 823-24). A review of his decision shows that the ALJ considered each of the examining and non-examining medical providers' reports/records regarding Taylor. (PageID. 60-64). The Court has reviewed the entirety of the record and has carefully considered the ALJ's analysis of the medical providers' reports and finds no error as most of those reports were lacking in a diagnosis or made conclusions without setting forth support for those conclusions. Rather than regurgitating the ALJ's multi-page evaluation of the medical evidence, the Court will make note here of the ALJ's analysis of Dr. Hodo's conclusions as that analysis is the one most challenged by Taylor:

> In July 2022, the claimant's representative sent her for a psychological evaluation with David Hodo, MD. She was accompanied by her cousin who provided most of the information. On mental status exam, the claimant's thoughts were somewhat constricted. She seemed to put in considerable effort into discussing her problems. Her mood was that of depression and her affect was flat. Her thoughts were logical at times and at times delusional. She endorsed auditory and visual hallucinations. She was not able to answer questions regarding basic memory. She could not do serial fives. Dr. Hoda diagnosed Mental Retardation, moderate and Major Depression with psychotic features vs. Schizophrenia, paranoid type (Exhibit C16F).
>
> * * *
>
> Dr. Hoda opined the claimant had extreme limitations in every area of mental functioning (Exhibit C16F). These findings are overly restrictive and not supported by the overall evidence of record. It is not supported by the objective findings of Dr. Hodo or the claimant's admitted and indicated activities and abilities. The claimant graduated high school and has held a job in the past. She denied problems getting along with others. She can arrange transportation for herself, goes to restaurants and attends church. Dr. Hodo noted that she talked readily when asked questions. The longitudinal evidence does not support more than moderate limitations in any area of mental functioning. Thus, the findings and opinion are not persuasive.

(PageID. 60-61, 63). Having reviewed Dr. Hodo's records regarding Taylor, the Court finds that the ALJ complied with the correct legal standard in assessing his opinions and findings. Moreover, the Court finds that substantial evidence supports the ALJ's conclusion. The Court notes that there is no evidence that Dr. Hodo administered any type of intellectual or IQ testing prior to reaching his opinion of "Mental Retardation, moderate" and certainly no evidence that this life-long impairment prevents Taylor from performing her previous employment. Likewise, there is no evidence of any medical condition or injury that caused her to develop a cognitive intellectual decline since her

last employment. With regard to her impairment caused by depression with psychotic features, there is ample evidence in the record, including the specific evidence cited by the ALJ, to support the ALJ's finding that Dr Hodo's extreme limitations in every area of mental functioning, based on one evaluation that was conducted after she filed her claim for benefits, were "overly restrictive and not supported by the overall evidence of record."

After discussing each of the medical providers reports and conclusions, the ALJ stated:

> The overall records indicate that the claimant functions in the borderline range of intelligence and has some depression. However, she has had no mental health treatment and she has been assessed with malingering at two consultative evaluation[s] and had no definitive diagnoses at two other evaluations. There is conflicting information regarding the claimant's education but overall indicates that she graduated from high school and that she has been employed. She also has minimal treatment for any physical condition. The records are variable regarding her gait. She is sometimes noted to ambulate with a limp and other times presented with normal gait. No deficits in muscle strength were noted by any provider or examiner. More recently she had some reduced range of motion, but no other deficits were noted. The claimant was sent for multiple consultative exams and psychological evaluations in an attempt to fully develop the case. She does not have any regular or ongoing treatment with any provider. The objective evidence does not support a disabling residual functional capacity or greater than marked limitations in any area of mental functioning.

(PageID. 62).

It is well-established that it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. This Court is limited to a determination of whether the ALJ's decision is supported by substantial evidence and based on proper legal standards. Having reviewed the entire

transcript, including the medical records, Taylor's initial application for SSI, Taylor's Function Reports, and Taylor's testimony at the hearing before the ALJ, and considering the applicable law, the Court finds that the ALJ has properly considered the medical evidence and has properly supported his RFC findings. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

B. **Whether the ALJ Properly Evaluated SSR 85-15 and Listings 12.11 and12.03**

Taylor contends that the ALJ erred in finding that her mental impairments did not meet Listings 12.04 (depressive, bipolar, and related disorders) and/or 12.11 (neurodevelopmental disorders) and by failing to consider Listing 12.03 (schizophrenia spectrum and other psychotic disorders). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04, and 12.11. "To 'meet' a listing, the claimant must have a 'medically determinable impairment(s) that satisfies all of the criteria of the listing.'" *Johnson v. Acting Comm'r of Soc. Sec.*, No. 24-11459, 2025 WL 671262, at *2 (11th Cir. Mar. 3, 2025) (quoting 20 C.F.R. § 404.1525(d); citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). "'An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Id.* (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "The claimant bears the burden of proving that she meets a listing." *Id.* (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). The Commissioner asserts that Taylor failed to meet this burden.

To meet any of these three listings, a claimant must prove that she meets the paragraph A *and* the paragraph B criteria **OR** that she meets the paragraph A *and* the paragraph C criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.03, 12.04, and 12.11. First, to the extent that Taylor contends that the ALJ erred because he did not

13

discuss the paragraph A criteria, this argument fails because such an assessment was not necessary since he found that she did not prove that she met the paragraph B or the paragraph C criteria. The issue here then is whether substantial evidence supported the ALJ's determination that Taylor did not meet the paragraph B or paragraph C criteria for any of the applicable listings.

In his decision, the ALJ found that Taylor had the severe mental impairments of borderline intellectual functioning and major depressive disorder with psychotic features. In evaluating whether either of these impairments met or equaled a listing, the ALJ stated:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.11. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
> In understanding, remembering or applying information, the claimant has a moderate limitation. On mental status exam, the claimant had poor memory. She was estimated to function in the low to borderline range of intelligence. She had difficulty with proverbs and abstractions. However, her basic thought processes appeared within normal limits. Doctors noted that she was vague, a poor historian and seemed to purposefully provide vague answers, ignored questions and malingered (Exhibits C9F and C14F).
>
> In interacting with others, the claimant has a moderate limitation. She reported that she generally gets along well with others. She denied problems getting along with coworkers or supervisors. She also endorsed good relationships with her adult children. She reported that she

> attended church and went to restaurants about once per month. She functioned in a fairly isolated manner.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. On mental status exams, her concentration appeared adequate at times and at other times, it was difficult to assess due to her vague responses.
>
> As for adapting or managing oneself, the claimant has experienced a moderate limitation. The records reflect varying reports of whether the claimant lives alone, with a friend or with her cousin. She self-reported that she lives with a friend who is blind. She denied that she does any household chores. She indicated that she does not cook but can prepare a simple meal such as a sandwich. The claimant was able to arrange transportation for herself to get to multiple consultative exams arranged for her.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The medical evidence in the record does not indicate that the claimant has a mental impairment that is serious and persistent. The record does not contain documented medical history of the existence of the disorder over a period of the last two years with evidence of treatment or therapy and a minimal capacity to adapt to changes in environment that are not already part of the claimant's daily life.

(PageID. 57-58). Having reviewed the record, the Court finds that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's findings as set forth above. As previously discussed, it is not this Court's place to reweigh the evidence or substitute its judgment for that of the Commissioner. *See Chester*, 792 F.2d at 131. The Court further finds that any error by the ALJ in not specifically mentioning Listing

12.03 was harmless since the ALJ found that neither the paragraph B nor paragraph C criteria were met.

## VII. CONCLUSION

Based on the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff Shirlie Taylor benefits be **AFFIRMED**.

**DONE** and **ORDERED** this the **29th** day of **September, 2025**.

s/P. BRADLEY MURRAY  
**UNITED STATES MAGISTRATE JUDGE**
